IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| PAULA DALLAS PRESLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:13cv600-CSC |
| | ) | (WO) |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I. Introduction**

The plaintiff applied for applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*., alleging that she was unable to work because of a disability. She is seeking disability benefits for a closed period from the date of onset on May 18, 2007 until the date she was last insured on March 31, 2008. Her application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). The

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

parties have consented to the United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment, pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1. Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II. Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

> To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005). Substantial evidence is "more than a scintilla," but less than a preponderance; it "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (quotation marks omitted). The court "may not decide the facts anew, reweigh the evidence, or substitute . . . [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004) (alteration in original) (quotation marks omitted).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  The Issues

**A. Introduction**.   Plaintiff Paula Dallas Presley ("Presley") was completely incapacitated on the date of administrative hearing due to suffering an aneurysm in January 2010. (R. 35). Her husband testified on her behalf. Following the hearing, the ALJ concluded that Presley has medically determinable impairments of "hypertension; thyroid problems; and obesity." (R. 24). The ALJ also determined that her heart problems were not severe. (*Id*.) The ALJ concluded that Presley was not disabled because "[t]hrough the date

last insured, the claimant did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months." (*Id*.)

**B. Plaintiff's Claims**. As stated by the plaintiff, she presents two issues for the Court's review.

> I. Whether the Administrative Law Judge failed to properly consider plaintiff's alleged heart problems as a medical impairment.
>
> II. Whether the Administrative Law Judge failed to provide sufficient good cause for according little weight to the medical opinions of two treating physicians.

(Doc. # 12, Pl's Br. at 1-2, 6-7).

## IV. Discussion

A disability claimant bears the initial burden of demonstrating an inability to return to her past work. *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990). In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings, (2) diagnoses of examining physicians, (3) subjective evidence of pain and disability, e.g., the testimony of the claimant and her family or friends, and (4) the claimant's age, education, and work history. *Tieniber v. Heckler*, 720 F.2d 1251 (11th Cir. 1983). The ALJ must conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable and unfavorable facts for review. *Cowart v. Schweiker,* 662 F.2d 731, 735-36 (11th Cir. 1981). The ALJ must also state, with sufficient

specificity, the reasons for his decision referencing the plaintiff's impairments.

> *Any* such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual *shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.*

42 U.S.C. § 405(b)(1) (emphases added). Within this analytical framework, the court will address the plaintiff's claims.

      A.      **Heart Problems - Medical Impairment**. The court quickly dispenses with the plaintiff's first issue. Presley argues that because the ALJ failed to delineate her heart problems as a medically determinable impairment, the ALJ failed to properly "consider and explain the findings relating to [her] heart problems and the severity of those problems." (Doc. # 12 at 7). The ALJ denied Presley disability benefits because the ALJ concluded that her impairments did not significantly interfere with her ability to perform work during the closed period from May 18, 2007 until the last insured date of March 31, 2008. The ALJ considered Presley's heart problems but found that "the medical evidence of record, . . . indicates that these were mild and controlled by medication." (R. 24). In reaching that finding, the ALJ reviewed the plaintiff's medical records for the closed period in question. It is clear that the ALJ considered Presley's heart problems. Moreover, after carefully reviewing the medical records, the court concludes that substantial evidence supports the ALJ's conclusion that Presley's heart problems did not render her disabled during the closed period.

Presley applied for disability income benefits on February 17, 2010, alleging disability due to an aneurysm, heart problems, high blood pressure and thyroid problems. (R. 156). She alleged an onset date of May 18, 2007. (R. 175). On May 18, 2007, Presley presented to her family doctor, Dr. Vester, complaining of being lightheaded and dizzy. (R. 192). According to Presley, these symptoms began three weeks earlier, and were getting worse. (*Id*.) Dr. Vester referred Presley to Dr. Reddy, a cardiologist.

Dr. Reddy saw Presley on June 14, 2007. (R. 259-60). At that time, she complained of palpitations, chest discomfort, frank syncope and issues with her blood pressure. (R. 259).

> Over the past six months increasing rapid heart rate episodes according to her causing some tightness in the chest and dyspnea on exertion. . . . She has been having dizzy spells, heart racing lasting approximately 5 minutes with tightness in the chest. No radiation. No nausea. Does admit to shortness of breath with this.

(*Id*.)

Dr. Reddy suspected uncontrolled hypertension, prescribed medication and scheduled cardiac studies. A nuclear perfusion study was within normal limits. (R. 191, 200, 258). A carotid study was normal. (*Id*.) On August 9, 2007, Dr. Reddy noted that Presley's palpitations had improved with medication, and there was no evidence of ischemia. (R. 258).

On September 20, 2007, Presley returned to Dr. Reddy. At that time, she complained of "occasional chest pain, heart rate beating fast and feeling lightheaded." (R. 257). She had no further episodes of fainting. (*Id*.) A stress test was equivocal; the "GXT portion was abnormal, but the perfusion portion was normal." (*Id*.)

6

Presley underwent a heart catheterization which revealed "only mild coronary artery disease, mild peripheral vascular disease, and no renovascular hypertension." (R. 256, 186). Her thyroid function was also normal. (*Id*.) On October 23, 2007, Dr. Reddy opined that

> from a cardiac standpoint, she would be at low-risk for going back to work. She needs to lose weight. Low salt diet and she can return to work.

(*Id*.)

Presley did not see Dr. Reddy again until July 15, 2008, over three months after her insured status expired. At that time, she "denies any of the symptoms, specifically denies chest pain, shortness of breath, orthopnea, PND, palpitations, or syncope." (R. 185, 254). Her EKG revealed a normal sinus rhythm and she had normal thyroid function. (*Id*.) In September 2008, Presley again reported to Dr. Reddy that she was not experiencing "any significant chest pain, shortness of breath, palpitations or syncope." (R. 182, 151). She was "feeling better overall." (*Id*.)

To be eligible for disability insurance benefits, Presley must demonstrate that "she is unable to engage in substantial gainful activity by reason of a medically determinable impairment *that can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months*." 42 U.S.C. § 423(d)(1)(A) (emphasis added). *See also Denomme v. Comm'r, Soc. Sec. Admin.*, 518 Fed. Appx. 875, 877 (11th Cir. 2013); *Beegle v. Soc. Sec. Admin., Comm'r.*, 482 Fed. Appx. 483, 485 (11th Cir. 2012). The medical records support the ALJ's determination that Presley's heart problems did not rise to the level of an impairment because they did not last for a continuous period of at least

7

twelve months, and they did not interfere with her ability to perform work. *See Sanchez v. Comm'r of Soc. Sec.*, 507 Fed. Appx. 855, 857 (11th Cir. 2013) ("An impairment or combination of impairments is not severe if it does not significantly limit the claimant's physical or mental ability to do basic work activities."). Dr. Reddy, Presley's treating cardiologist, specifically opined in October 2007, during the closed period at issue, that Presley's heart condition did not prevent her from working. *See* R. 256.

Even if the ALJ erred, at this juncture, the error was harmless. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (applying harmless error analysis in the Social Security case context). *See also Gray v. Comm'r of Soc. Sec.*, 550 Fed. Appx. 850, 853 (11th Cir. 2013) (same); *Denomme*, 518 Fed. Appx. at 877-878 ("When, however, an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand."). In this case, the ALJ considered that Presley had been treated for heart problems but concluded that her heart problems did not significantly impede her ability to work. "While the ALJ could have been more specific and explicit in his findings, he did consider all of the evidence and found that it did not support the level of disability [Presley] claimed." *Freeman v. Barnhart*, 220 Fed. Appx. 957, 960 (11th Cir. 2007). Thus, to the extent that the ALJ erred by failing to specifically identify Presley's heart problems as an impairment that error was harmless.

  **B.**   **Treating Physicians.** Presley argues that the ALJ failed to provide sufficient reasons for failing to give great weight to the opinions of her treating physicians, Dr. Vester

and Dr. Reddy. (Doc. # 12, Pl's Br. at 7-8). The law in this circuit is well-settled that the ALJ must accord "substantial weight" or "considerable weight" to the opinion, diagnosis, and medical evidence of the claimant's treating physician unless good cause exists for not doing so. *Jones v. Bowen,* 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). The Commissioner, as reflected in her regulations, also demonstrates a similar preference for the opinion of treating physicians.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.

*Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 CFR § 404.1527 (d)(2)). The ALJ's failure to give considerable weight to the treating physician's opinion is reversible error. *Broughton*, 776 F.2d at 961-62.

There are, however, limited circumstances when the ALJ can disregard a treating physician's opinion. The requisite "good cause" for discounting a treating physician's opinion may exist where the opinion is not supported by the evidence, *or* where the evidence supports a contrary finding. Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, *or* unsupported by objective medical evidence. *See Jones v. Dep't. of Health & Human Servs.*, 941 F.2d 1529, 1532-33 (11th Cir. 1991); *Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991); *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987). The weight afforded to a physician's conclusory

9

statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence of the claimant's impairment. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983). The ALJ must articulate the weight given to a treating physician's opinion and must articulate any reasons for discounting the opinion. *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987).

In October 2011, over three years after the expiration of her insured status, Dr. Vester and Dr. Reddy submitted letters in support of Presley's claim for disability benefits.[3] The letters from the doctors are identical.

> It is my opinion that from at least as early as 03/31/2008 and continuing to the present, that Paula Presley would be expected to be unable to work at all at least 3 or more days per month on average, at any level of exertion, including work at a sedentary level of exertion, due to her multiple health impairments, including, but not limited to, claudication from very diffuse small vessel disease, fatigue, chest pain, tachychardia, palpitations, shortness of breath, syncopal episodes, hypertension, headaches and dizziness.

(R. 354, 357).

After reviewing the medical evidence, the ALJ afforded the opinions of Dr. Vester

---

[3] Dr. Reddy submitted two other statements in which he opined that "from at least as early as 03/31/2008 and continuing to present," Presley would be unable to sustain regular work activity and she would have to "lie down and/or elevate her feet and legs for a total of at least two hours" each day. (R. 356, 358). These restrictions are due to her "medical impairments including, but not limited to, claudication from very diffuse small vessel disease, fatigue, chest pain, tachychardia, palpitations, shortness of breath, syncopal episodes, hypertension, headaches and dizziness." (*Id*.)

and Dr. Reddy "little weight" because

> these opinions do not apply to the period from the alleged disability onset date of May 18, 2007 to the date last insured of March 31, 2008. Both of these opinions state that the claimant was unable to work "from at least as early as 03/31/2008 and continuing to present." This does not provide information concerning the claimant's condition during the relevant period.

(R. 28). The ALJ, however, gave great weight to Dr. Reddy's October 23, 2007 opinion that "the claimant could return to work." (R. 21).

The ALJ acknowledged that Dr. Reddy and Dr. Vester treated Presley, but after a thorough review of her treatment records, discounted the doctors' assessments. (R. 26-28). The ALJ's decision to discount these assessments is supported by substantial evidence. Neither Dr. Vester nor Dr. Reddy's treatment records support their assessments of the severity of Presley's impairments during the insured period.

First, because the doctors' assessment of Presley are identical, it is clear that they were not written personally by each doctor. It is also clear that these opinions were not based on a review of their treatment notes. For example, when Presley presented to Dr. Vester on May 18, 2007, complaining of lightheadedness and dizziness, Dr. Vester referred her to Dr. Reddy for consultation and treatment. Thereafter, Dr. Vester's records simply reflect Dr. Reddy's cardiac testing and treatment of Presley. After her initial consultation with Dr. Vester in May 2007, Presley did not complain to him of any problems until April 9, 2008, after the expiration of her insured status. (R. 191, 200). There is nothing in Dr. Vester's treatment notes to indicate the level of disability he attributed to Presley.

Furthermore, Dr. Reddy's treatment notes do not support the level of disability he attributes to Presley. Her cardiac tests were normal or within normal limits. (R. 241, 258, 186). On October 23, 2007, Dr. Reddy specifically opined that Presley could return to work. (R. 256). In July 2008, almost four months after the expiration of her insured status, Presley denied that she was experiencing "chest pain, shortness of breath, orthopnea, PND, palpitations, or syncope." (R. 185, 254). On September 23, 2008, she reported "feeling better overall," and again denied "any significant chest pain, shortness of breath, palpitations, or syncope." (R. 182, 251).

The medical evidence in the record contradicts Dr. Reddy's assessment of the severity of Presley's impairments. The ALJ may disregard the opinion of a physician, provided that he states with particularity reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987). The ALJ examined and evaluated the treatment records for evidence supporting Dr. Reddy and Dr. Vester's assessments of Presley's ability to work. Only then did the ALJ discount the doctors' assessments of Presley's abilities. "Even though Social Security courts are inquisitorial, not adversarial, in nature, claimants must establish that they are eligible for benefits." *Ingram v. Comm'r of Soc. Sec.,* 496 F.3d 1253, 1269 (11th Cir. 2007) (citing *Doughty v. Apfel,* 245 F.3d 1274, 1281 (11th Cir. 2001)). *See also Holladay v. Bowen,* 848 F.2d 1206, 1209 (11th Cir. 1988). This the plaintiff has failed to do. Based upon its review of the ALJ's decision and the objective medical evidence of record, the court concludes that the ALJ properly rejected Dr. Reddy and Dr. Vester's opinions regarding Presley's

limitations during the closed period from the date of onset on May 18, 2007 until the date she was last insured on March 31, 2008.

Pursuant to the substantial evidence standard, this court's review is a limited one; the entire record must be scrutinized to determine the reasonableness of the ALJ's factual findings. *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992). Given this standard of review, the court finds that the ALJ's decision was supported by substantial evidence.

## V. Conclusion

The court has carefully and independently reviewed the record, and concludes that the decision of the Commissioner is supported by substantial evidence.

A separate order will be entered affirming the Commissioner's decision.

Done this 2nd day of October, 2014.

                              /s/Charles S. Coody
                              CHARLES S. COODY
                              UNITED STATES MAGISTRATE JUDGE